IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES N. BROWN,                              08-CV-621-BR

       Plaintiff,                          OPINION AND ORDER

v.

MARK NOOTH, JAMIE MILLER,
CAPTAIN RODRIQUEZ, OFFICER YOST,
and SARGENT BOLTEN,

       Defendants.


CHARLES N. BROWN
4174405
Deer Ridge Correctional Institution
3920 E. Ashwood Rd.
Madras, OR  97741

       Plaintiff, *Pro Se*


1   -   OPINION AND ORDER

**JOHN KROGER**
Attorney General
**KRISTIN A. WINGES**
**LEONARD W. WILLIAMSON**
Assistant Attorneys General
Oregon Department of Justice
1162 Court St. N.E.
Salem, OR  97301
(503) 947-4700

      Attorneys for Defendants

**BROWN, Judge.**

     This matter comes before the Court on the Motion (#30) for Summary Judgment filed by Defendants Mark Nooth, Jamie Miller, Captain Gilberto Rodriguez, Officer Jay Yost, and Sergeant Candy Bolton and Plaintiff Charles N. Brown's Motion (#49) in Opposition to Defendants' Motion for Summary Judgment.  The Court construes Brown's Motion (#49) as a Response to Defendants' Motion for Summary Judgment, and, therefore, **DENIES** it as moot.

     For the reasons that follow, the Court **GRANTS in part** Defendants' Motion as follows:

     (1)  **GRANTS** Defendants' Motion as to Brown's claims against them in their official capacities;

     (2)  **GRANTS** Defendants' Motion as to Brown's claim against Defendants for denying him adequate medical care;

     (3)  **DENIES** Defendants' Motion as to Brown's claim against Sergeant Bolton;

     (4)  **GRANTS** Defendants' Motion as to Brown's claim against Officer Yost; and

2  -  OPINION AND ORDER

(5) **GRANTS** Defendants' Motion as to Brown's claims against Defendants Nooth, Miller, and Rodriguez.

## THE PARTIES

Brown is an inmate of the Oregon Department of Corrections (ODOC) who was housed at the Snake River Correctional Institution (SRCI) in Ontario, Oregon, during the events giving rise to this matter. Defendant Nooth is the Superintendent of SRCI, Defendant Miller is the Assistant Superintendent of Security at SRCI, Defendant Rodriguez is a Captain and Inmate Assignment Officer at SRCI, Defendant Bolton is a Sergeant at SRCI, and Defendant Yost is a Corrections Officer at SRCI.

## PROCEDURAL BACKGROUND

On May 21, 2008, Brown filed a Complaint and Brief in Support of § 1983 Civil Suit in this Court pursuant to 42 U.S.C. § 1983 against Defendants in their individual and official capacities in which he alleges they violated his rights under the Eighth and Fourteenth Amendments. Brown seeks damages, a declaration that Defendants violated his rights under the United States Constitution, and an injunction ordering Defendants to keep him in Complex One of SRCI or to place him in a minimum-security facility. Although Brown is appearing *pro se*, the Court notes he is a competent litigant and has already litigated a

3  -  OPINION AND ORDER

claim against Washington County and Washington County medical
personnel for an assault and allegedly deficient medical care
while he was a pretrial detainee in Washington County.  *See Brown
v. Carnevale*, No. 06-CV-1238.

Brown contends Defendants knew a pervasive risk of harm to
inmates such as Brown existed at SRCI and were deliberately
indifferent to Brown's safety because (1) Sergeant Bolton did not
take any action after Brown reported to her a threat to his life
on November 14, 2007; (2) Officer Yost watched another inmate
assault Brown on December 24, 2007, and waited for 45 seconds
without taking any action to assist Brown; and (3) Superintendent
Nooth, Captain Rodriguez, and Assistant Superintendent Miller
(the supervisory Defendants) improperly implemented and/or
enforced SRCI policies that, in turn, allowed the assault to
occur.  In addition, Brown asserts he has stated a valid claim
pursuant to § 1983, he has exhausted his administrative remedies,
and Defendants are not entitled to qualified immunity.  Brown
attached copies of his grievance forms to his Brief in Support of
§ 1983 Civil Suit.

Also on May 21, 2008, Brown filed a Motion for Temporary
Restraining Order and for Preliminary Injunction, seeking to
prohibit Defendants from moving Brown to certain units at SRCI or
from moving Brown to a facility that is not wheelchair compatible
or lacks a sufficient law library and word-processing system.  On

4    -   OPINION AND ORDER

June 4, 2008, the Court denied Brown's Motion for Temporary Restraining Order without prejudice on the ground that Brown did not present specific facts clearly showing he was in imminent danger of being moved or that he was in imminent danger of suffering irreparable injury even if he was moved.  The Court also denied Brown's Motion for a Preliminary Injunction on the ground that Brown did not include a certificate of service or a showing of why notice to Defendants should not be required.

On July 28, 2008, Defendants filed an Answer and Affirmative Defenses, in which they assert Defendants are entitled to qualified immunity, Brown failed to state a claim on which relief can be granted, and Brown failed to exhaust his administrative remedies.

On August 29, 2008, Brown filed a Response to Defendants' Answer and Affirmative Defenses along with a Declaration in which he refers the Court to his Brief in Support of § 1983 Civil Suit to counter Defendants' affirmative defenses.

On October 14, 2008, Defendants filed their Motion for Summary Judgment in which they request the Court to enter judgment in their favor on each of Brown's claims on the grounds that Defendants did not violate Brown's rights under the Eighth Amendment, and, in any event, Defendants are entitled to qualified immunity.  On November 17, 2008, Brown filed his Response.  In his Response, Brown included arguments related to

5  -  OPINION AND ORDER

whether he received adequate medical care after the December 24, 2007, assault.

On November 20, 2008, Brown filed a Motion Requesting Permission to File Supplemental Documents in Opposition to Defendants' Motion for Summary Judgment, and on January 8, 2009, the Court granted Brown's Motion in part, stating he had until February 20, 2009, to file supplemental documents that related solely to the claims in his Complaint.

On November 26, 2008, Brown filed a Motion for Permission to File a Supplemental Complaint for the purpose of alleging new claims against Defendants on the basis of a second assault that occurred on November 19, 2008.  On January 9, 2009, the Court denied Brown's Motion on the grounds that allowing Brown to amend his Complaint would result in undue delay in the orderly resolution of the current matter.  The Court's denial was without prejudice to Brown's right to pursue a separate civil action for claims arising from the November 19, 2008, assault.

On December 8, 2008, Brown renewed his Motion for Temporary Restraining Order and Preliminary Injunction on the basis of the second assault; on December 16, 2008, Brown filed a Motion to Compel Discovery; and on February 2, 2009, Brown filed a Motion to Reconsider in which he requested the Court to reconsider its January 8, 2009, Order granting in part his Motion Requesting Permission to File Supplemental Documents.  In his Motion to

Reconsider, Brown requested more time to respond to Defendants'
Motion for Summary Judgment on the basis that he had not yet
received the discovery that was the subject of his Motion to
Compel Discovery.

On July 30, 2009, the Court issued an Order in which it
(1) denied Brown's renewed Motion for Temporary Restraining Order
and Preliminary Injunction because, among other things, Brown did
not present a certificate of service or a showing of why notice
to Defendants should not be required; (2) denied Brown's Motion
to Compel Discovery because Brown's numerous discovery requests
pertaining to general information about the efforts on the part
of ODOC to counter security threats are not relevant to the issue
of whether Defendants were deliberately indifferent to Brown's
safety; and (3) denied Brown's Motion to Reconsider as moot on
the grounds that Brown no longer needed extra time to respond to
the discovery that was the subject of his Motion to Compel
Discovery because the Court had denied that Motion.

In his Response to Defendants' Motion for Summary Judgment,
Brown asserts he has not yet received all of the discovery he
requested from Defendants.  The Court notes that Brown filed his
Response before he filed his Motion to Compel Discovery, and, as
noted, the Court denied Brown's Motion to Compel Discovery on
July 30, 2009.  Any contention Defendants have not complied with
discovery is, therefore, moot.

7   -   OPINION AND ORDER

Accordingly, the only matter remaining before the Court is Defendants' Motion for Summary Judgment.

## STANDARDS

### I.  Summary judgment.

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party. *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir.

8   -   OPINION AND ORDER

1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

When a plaintiff is appearing *pro se*, the court

> must consider as evidence in his opposition
> to summary judgment all of [his] contentions
> offered in motions and pleadings, where such
> contentions are based on personal knowledge
> and set forth facts that would be admissible
> in evidence, and where [the plaintiff]
> attested under penalty of perjury that the
> contents of the motions or pleadings are true
> and correct.

*Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). The Court "must consider the motion papers as well as such other papers in the record to which they refer." *Martinez v. Stanford*, 323 F.3d

1178, 1184 (9th Cir. 2003)(citing *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028-31 (9th Cir. 2001)).  In addition, the court has a duty "to construe *pro se* pleadings liberally," and afford the plaintiff the benefit of any doubt, especially in the context of a *pro se* prisoner civil rights case. *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003)(citing *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001)).

**II.  42 U.S.C. § 1983.**

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To defeat Defendants' Motion for Summary Judgment, Brown must establish there are triable issues of fact as to either of the following elements:  "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right." *L.W. v. Grubbs (Grubbs I),* 974 F.2d 119, 120 (9th Cir. 1992).

**III. Eighth Amendment.**

"The [United States] Constitution does not mandate

comfortable prisons, but neither does it permit inhumane ones, and . . . the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quotations omitted).  "[T]he Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates."  *Id.* at 832-33 (quotations omitted).

Prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners' because 'being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009)(quoting *Farmer*, 511 U.S. at 825).

Not every injury inflicted by another prisoner, however, "'translates into constitutional liability for prison officials responsibility for the victim's safety.'"  *Id.* (quoting *Farmer*, 511 U.S. at 834).  "[A] prison official violates the Eighth Amendment only when two requirements are met.  The deprivation alleged must be, objectively, sufficiently serious[; *i.e.*,] a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  *Farmer*,

511 U.S. at 834 (quotations omitted).  "[A] prison official must [also] have a sufficiently culpable state of mind.  In prison-conditions cases[,] that state of mind is one of deliberate indifference to inmate health or safety."  *Id.* (citations and quotations omitted).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837.

"It is well-settled that deliberate indifference occurs when an official act or *failed to act* despite his knowledge of a substantial risk of serious harm." *Clem*, 566 F.3d at 1181 (citations and quotations omitted)(emphasis in original).

In addition, "the deliberate indifference standard incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Norwood v. Vance*, 572 F.3d 626, 630 (9th Cir. 2009)(quoting *Farmer*, 511 U.S. at 845)(internal quotation omitted).

## FACTUAL BACKGROUND

Defendants submitted the required Concise Statement of Material Facts and supporting affidavits with their Motion. Brown has also submitted a Concise Statement of Material Facts in which he disputes some of Defendants' asserted material facts. In addition, Brown included with his Response the January 22, 2008, Declaration of Lamar Jeffries; copies of three newspaper articles regarding prison conditions and gangs; copies of records showing his status; and copies of his grievance forms.

In light of the Court's duty to treat a *pro se* civil rights plaintiff's filings "liberally" and Brown's numerous sworn statements in the record of the case as a whole, the Court will consider all of those materials as submitted in opposition to Defendants' Motion in the interests of justice.  Those materials include:  Brown's sworn Complaint and Affidavit in Support of Complaint; his May 21, 2008, Declaration in Support of his Motion for Temporary Restraining Order and Preliminary Injunction; his August 29, 2008, Declaration in Support of his Response to Defendants' Affirmative Defense; and his December 16, 2008, Declaration in Support of his Motion to Compel Discovery.

The following factual summary, therefore, includes all of the facts submitted by Defendants that are not directly refuted by Brown, as well as the additional facts Brown has placed in the record, all of which are viewed in the light most favorable to

Brown.

As noted, Brown was at all material times housed at SRCI. At present, however, Brown is an inmate at Deer Ridge Correctional Institution located in Madras, Oregon.

Brown is a 65-year old, handicapped, minimum-security prisoner who uses a wheelchair, which places him in a group known by the management and staff at SRCI to be a target for extortion and violence by Security Threat Groups (STGs), which are groups of inmates who distinguish themselves from others and engage in a acts of illicit activity that have the potential to threaten the public, other inmates, or prison staff. *See* Or. Admin. R. 291-069-0210.

As noted, Defendant Nooth is the Superintendent of SRCI, Defendant Miller is the Assistant Superintendent of Security at SRCI, Defendant Rodriguez is a Captain and Inmate Assignment Officer at SRCI, Defendant Bolton is a Sergeant at SRCI, and Defendant Yost is a Corrections Officer at SRCI.

STGs have harassed and sought to extort Brown since his arrival at SRCI. Brown was initially housed in Complex Three, Unit 3E, at SRCI. His first cellmate was a gang leader who offered Brown drugs and attempted to give Brown a tattoo over Brown's objection. Accordingly, Brown requested to be moved on his second day at SRCI and was subsequently moved to Complex Three.

14   -   OPINION AND ORDER

Brown's cellmate in Complex Three, Lyle Hurlbert, was a member of a prison gang. Brown states he had "considerable problems" with Hurlbert. On November 11, 2007, Brown requested to be moved, but the duty officer could not effectuate the move immediately. On the morning November 13, 2007, Hurlbert assaulted Brown in their cell by choking him and verbally threatened Brown's life. Brown again requested to be moved because of his cellmate's violence. The officer on duty attempted to have Brown moved to Complex One, which is SRCI honor housing, but was unable to do so. Brown was subsequently moved from Complex Three to Complex Two.

On November 14, 2007, representatives of a Complex Two STG informed Brown he was not welcome in Complex Two and that he would be killed if he stayed. On the same day, Brown reported this threat to Sergeant Bolton and to an unidentified unit officer and was told he either could refuse to "cell in," which would result in disciplinary action, or wait until a beating occurred, but in any event he was not going to be moved at that time. Sergeant Bolton did not take any action in response to Brown's report.

On November 15, 2007, Brown was informed by representatives of a Complex Two STG that he was not allowed to sit at any tables or use any chairs in the day room or the television room. The STG representatives told Brown he should move out of Complex Two,

or he would be beaten. Brown was unable to move and also unable to complain to the duty officers for fear of retaliation. From November 15, 2007, until December 24, 2007, Brown endured almost daily threats from various STGs.

On December 24, 2007, Brown was assaulted by another SRCI inmate while watching television in the Complex Two television room. Officer Yost was the officer on duty at the time. Officer Yost watched the assault for 45 seconds, then called for a response team. Officer Yost did not physically intervene to separate the inmates himself or verbally order the inmates to cease fighting. The response team arrived within 90 seconds of Officer Yost's call and separated the inmates. The assault lasted approximately three minutes.

As a result of the assault, Brown suffered a laceration to his right ear, facial lacerations, a broken finger, and other injuries. Brown was treated at the hospital in Ontario, Oregon, and returned to SRCI, but it was two weeks before he received any followup care for his injuries. At that time, an unidentified SRCI doctor told him his finger might be permanently damaged. Brown also states he complained of headaches and double vision, but that SRCI medical personnel did not address these problems.

On December 26, 2007, Brown was moved to a different unit as his request.

During his time at SRCI, Brown was housed with four STG

16  -  OPINION AND ORDER

members, and he witnessed over 30 assaults.  Brown states he

repeatedly complained to unidentified SRCI staff and management

about the harassment.  In addition, he requested to be

transferred to Complex One, for which he had been eligible since

April 12, 2006, and for which he was on the wait list.

Nonetheless, Brown was not allowed to transfer to Complex One

until after the December 24, 2007, assault.


**DISCUSSION**

Although Brown brings his claims pursuant to the Eighth and

Fourteenth Amendments, the Court will evaluate the claims only

under the Eighth Amendment standard because the Fourteenth

Amendment does not apply to convicted prisoners in this context.

*See Redman v. County of San Diego*, 942 F.2d 1435, 1441 (9th Cir.

1991)(citing *Bell v. Wolfish*, 441 U.S. 520, 536 (1979)(Eight

Amendment standards rather than Fourteenth Amendment standards

apply to convicted prisoners in the context of claims for cruel

and unusual punishment).

As noted, Brown contends Defendants knew a pervasive risk of

harm to inmates such as Brown existed at SRCI and were

deliberately indifferent to Brown's safety because (1) Sergeant

Bolton did not take any action after Brown's November 14, 2007,

report of the threat to his life; (2) Officer Yost watched the

December 24, 2007, assault for 45 seconds without taking any

17   -   OPINION AND ORDER

action to avert the danger to Brown;  and (3) Superintendent

Nooth, Captain Rodriguez, and Assistant Superintendent Miller

(the supervisory Defendants) improperly implemented and/or

enforced SRCI policies that, in turn, allowed the assault to

occur.

Although Defendants do not dispute they each acted under

color of state law, they contend they are entitled to summary

judgment as to all of Brown's claims on the grounds that they did

not violate Brown's Eighth Amendment rights.  In the alternative,

Defendants contend they are entitled to qualified immunity.

**I.    Brown's claims against Defendants in their official capacities.**

The Eleventh Amendment provides:  "The Judicial Power of the

United States shall not be construed to extend to any suit in law

or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or Subjects

of any Foreign State."  Although the Eleventh Amendment "by its

terms does not bar suit against a State by its own citizens, [the

Supreme Court] has consistently held that an unconsenting State

is immune from suit brought in federal courts by her own citizens

as well as by citizens of another State." *Edelman v. Jordan,* 415

U.S. 651, 662-63 (1974).

In addition, the Supreme Court has held actions against

state officials acting in their official capacities are

equivalent to actions against the State itself and, therefore,

18   -  OPINION AND ORDER

raise the same Eleventh Amendment concerns as actions against the State. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). Accordingly, the Ninth Circuit has concluded the Eleventh Amendment bars claims for money damages against state officials acting in their official capacities. *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 918 (9th Cir. 2003).

Here Brown's Complaint includes claims against Defendants in their official capacities. Because these Defendants are officials of the Department of Corrections for the State of Oregon, Brown's claims against them are essentially claims against the State of Oregon. As noted, such claims are generally barred by sovereign immunity.

A state official acting in his official capacity, however, may be sued for prospective injunctive relief under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Id.* at n.10. *See also Bank of Lake Tahoe v. Bank of Am.,* 318 F.3d 914, 918 (9th Cir. 2003). In addition, sovereign immunity does not bar suits against state officials for prospective declaratory relief. *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1036 (9th Cir. 2006).

**A.   Brown's claims for monetary damages.**

Brown requests compensatory and punitive damages in his Complaint, and he does not make any distinction as to whether he

19   -  OPINION AND ORDER

is requesting those damages against Defendants in their official
or individual capacities.  As noted, however, an action for
damages may not be brought against a state official acting in his
official capacity under § 1983. *Bank of Lake Tahoe*, 318 F.3d at
918.  Accordingly, Brown's claims against Defendants in their
official capacities are precluded to the extent those claims
request monetary damages.

The Court concludes on this record that Defendants are
entitled to summary judgment on the basis of Eleventh Amendment
immunity as to Brown's claims under § 1983 against Defendants
acting in their official capacities to the extent Brown is
seeking monetary damages against them.

**B.    Brown's claims for injunctive and declaratory relief.**

In his Complaint Brown requests a declaration that
Defendants violated his rights under the Constitution of the
United States and an injunction ordering Defendants to keep him
in Complex One of SRCI or to place him in a minimum-security
facility.  Accordingly, the only "prospective" relief requested
by Brown is the injunction.

"An award of prospective injunctive relief requires the
plaintiff to demonstrate a reasonable likelihood of future
injury." *Bank of Lake Tahoe*, 318 F.3d at 918 (citing *Kruse v.
Hawaii*, 68 F.3d 331, 335 (9th Cir. 1995)).  In other words, Brown
must show "that a credible threat exists that [he] will again be

20   -  OPINION AND ORDER

subject to the specific injury for which [he] seek[s] injunctive or declaratory relief." *Sample v. Johnson*, 771 F.2d 1335, 1340 (1985). Because the record reflects Brown is no longer an inmate at SRCI, the Court concludes Brown cannot show a reasonable likelihood that he will be assaulted at SRCI again. *See Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985) (possibility of being sent to maximum security unit "too speculative to rise to the level of reasonable expectation or demonstrated probability").

The Court, therefore, concludes on this record Defendants are entitled to summary judgment as to Brown's claims for injunctive and declaratory relief under § 1983 against Defendants acting in their official capacities.

## II. Brown's claims against Defendants in their individual capacities.

Defendants contend they are entitled to summary judgment as to Brown's claims against them in their individual capacities on the ground that Brown has cannot establish a genuine issue of material fact exists as to whether they violated his Eighth Amendment rights.

### A. Inadequate medical care.

Brown includes arguments in his Response to Defendants' Motion for Summary Judgment related to whether he received adequate medical care after the December 24, 2007, assault. Brown did not include a claim on this basis in his Complaint nor

21  -  OPINION AND ORDER

did he seek to amend his Complaint to include such a claim, but in his Affidavit in Support of Complaint he includes statements regarding the adequacy of his medical care.  Even if the Court liberally construed Brown's pleadings to include a claim for inadequate medical care in violation of his Eighth Amendment rights, the Court concludes Brown has not provided any facts that show any of Defendants were deliberately indifferent with respect to Brown's medical care.  *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)(plaintiff must allege facts showing personal involvement on the part of defendants).

The Court, therefore, concludes on this record that Defendants are entitled to summary judgment to the extent Brown asserts he was denied adequate medical care in violation of his Eighth Amendment rights.

**B.    Brown's claim against Sergeant Bolton.**

Defendants contend they are entitled to summary judgment as to Brown's claim against Sergeant Bolton on the ground that she was not deliberately indifferent to a substantial risk of harm to Brown.  According to Brown, however, Sergeant Bolton was deliberately indifferent to a substantial risk of harm to him and thus violated Brown's Eighth Amendment rights because after he informed her of the threat against him, she should have taken action to prevent the assault on Brown and failed to do so.

Sergeant Bolton testified in her October 13, 2008, Affidavit

22  -  OPINION AND ORDER

that she does not recall having any conversations with Brown regarding his safety.  Brown, however, provided sworn statements that contradict Sergeant Bolton's Affidavit.  Brown asserts that on November 14, 2007, after representatives of a local STG threatened to kill him if he did not move out of Complex Two, he reported the threat to Sergeant Bolton, who did not take any action to avert a risk of harm to Brown, such as launching an investigation.  This evidence, although scant, is sufficient to create a triable jury question as to whether Defendants were aware that a pervasive risk of harm to inmates such as Brown existed at SRCI and as to whether Sergeant Bolton was deliberately indifferent to a such risk of harm to Brown.

The Court, therefore, concludes on this record that Brown has shown a genuine issue of material fact exists as to whether Sergeant Bolton violated Brown's Eighth Amendment rights.

**B.  Brown's claim against Officer Yost.**

Defendants contend they are entitled to summary judgment as to Brown's claim against Officer Yost on the ground that Officer Yost responded reasonably to the assault.  Brown contends Officer Yost violated Brown's Eighth Amendment rights by waiting 45 seconds before taking any action to alleviate the substantial risk of harm to Brown presented by the assault.

"[A] prison official[] who actually knew of a substantial risk to inmate health or safety may be found free from liability

23  -  OPINION AND ORDER

if they responded reasonably to the risk, even if the harm
ultimately was not averted." *Farmer*, 511 U.S. at 845.  In
addition, as noted, prison officials are "'accorded deference in
the adoption and execution of policies and practices that in
their judgment are needed to preserve internal order and
discipline and maintain institutional security.'"  *Norwood*,
572 F.3d at 603 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547
(1979)).

    In his October 13, 2008, Affidavit, Officer Yost testified
he responded to the situation in accordance with prison policy,
which requires an officer to evaluate the risk, to report the
situation, and to work with backup officers before resorting to
the use of force.  Or. Admin. R. 291-013-0065(3).  Officer Yost
testified he assessed the situation, secured the unit, and kept
the unit under control until the response team arrived.  Officer
Yost also testified that he called for a response team
"immediately."  Brown and Jeffries, however, provided sworn
statements that contradict Officer Yost's testimony.  Brown and
Jeffries state Officer Yost watched the altercation for 45
seconds without taking any action, including calling for a
response team.  Brown contends it was not reasonable to watch the
assault for nearly a minute before responding in some way.
Viewing the facts in the light most favorable to Brown, the Court
concludes a genuine question of material fact exists as to

24  -  OPINION AND ORDER

whether Officer Yost acted with deliberate indifference under all
of the circumstances when he watched the assault on Brown for 45
seconds before taking any action to alleviate the substantial
risk of harm to Brown presented by the assault.

The Court, therefore, concludes on this record that Brown
has shown a genuine issue of material fact exists as to whether
Officer Yost violated Brown's Eighth Amendment rights.

**C.    Brown's claim against the supervisory Defendants.**

Defendants contend they are entitled to summary judgment as
to Brown's claims against the supervisory Defendants because
there is not any evidence in the record the supervisory
Defendants violated Brown's Eighth Amendment rights.

"Liability under section 1983 arises only upon a showing of
personal participation by the defendant" in the alleged
constitutional deprivation.  *Taylor v. List*, 880 F.2d 1040, 1045
(9th Cir. 1989).  Liability may also be imposed if the defendant
sets into "'motion a series of acts by others which the actor
knows or reasonably should know would cause others to inflict the
constitutional injury.'"  *Gini v. Las Vegas Metro. Police Dep't*,
40 F.3d 1041, 1044 (9th Cir. 1994)(quoting *Merritt v. Mackey*, 827
F.2d 1368, 1371 (9th Cir. 1987)).  "'A supervisor may be liable
if there exists either (1) his or her personal involvement in the
constitutional deprivation, or (2) a sufficient causal connection
between the supervisor's wrongful conduct and the constitutional

25   -  OPINION AND ORDER

violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)(quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)). "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman*, 942 F.2d at 1446 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)(internal quotation omitted)). It is well-established, however, that "§ 1983 does not impose liability on individuals for the acts of their subordinates under a *respondeat superior* theory of liability." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978).

Brown does not contend the supervisory Defendants "personally participated" in violating his constitutional rights. Instead, Brown argues a sufficient causal connection exists between the failures of the supervisory Defendants to properly implement and/or enforce policies at SRCI and the December 24, 2008 assault on Brown to impose direct liability.

When determining whether a sufficient causal connection exists between a supervisory defendant's acts or omissions and alleged violations of a prisoner's Eighth Amendment rights, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose

acts or omissions are alleged to have caused a constitutional deprivation," especially when a prisoner seeks damages against individual prison officials. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). In addition, "[s]weeping conclusory allegations will not suffice to prevent summary judgment. The prisoner must set forth specific facts as to each individual defendant's deliberate indifference." *Id*. at 633-34.

Brown contends the supervisory Defendants are responsible for the conditions at SRCI that led to the his December 24, 2007, assault. Brown has established that the supervisory Defendants are aware of STG activity at SRCI, and that the supervisory Defendants are also aware inmates such as Brown are at high risk for STG harassment. To defeat summary judgment, however, Brown must also provide specific facts that show the supervisory Defendants, through the implementation and/or enforcement of SRCI policy, were deliberately indifferent to those risks. *Id*. at 633. Brown has not alleged any specific facts that tend to show that any of the supervisory Defendants are responsible for implementing a policy that is constitutionally deficient. In addition, Brown has not provided any specific facts that tend to show any of the supervisory Defendants failed to follow SRCI policies that would have alleviated the risk of harm to Brown or that any of the supervisory Defendants is responsible for the failure of other prison officials to follow prison policies that

would have alleviated the risk of harm to Brown.  Accordingly, Brown has not established a sufficient causal link exists between any act or omission on the part of the supervisory Defendants and the assault on Brown.

The Court, therefore, concludes on this record that Brown has not established a genuine issue of material fact exists as to whether the supervisory Defendants violated his Eighth Amendment Rights, and Defendants are entitled to summary judgment as to these claims.

**III. Qualified immunity.**

Defendants contend that even if their acts amounted to a violation of Brown's Eighth Amendment rights, they are entitled to qualified immunity.

"Generally officers performing discretionary duties have qualified immunity, which shields them 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1077 (9th Cir. 2003)(quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

In *Saucier v. Katz,* the Supreme Court held a court that is evaluating a defense of qualified immunity must first "determine whether--resolving all disputes of fact and credibility in favor of the party asserting the injury--the facts adduced at summary judgment show that the officer's conduct violated a constitutional right" before the court determined "whether, at the time of the violation, the constitutional right was 'clearly established.'"  533 U.S. 194, 201 (2001).  *See also Pearson v. Callahan*, 129 S. Ct. 808, 812 (2009).

### A.  Sergeant Bolton and Officer Yost.

The Court has concluded that genuine questions of material fact exist as to whether Officer Yost or Sergeant Bolton violated Brown's Eighth Amendment rights.  The Court, however, "may not simply stop with a determination that a triable issue of fact exists as to whether prison officials were deliberately indifferent; instead, the qualified immunity analysis is separate from the constitutional inquiry." *Ford v. Ramirez-Palmer*, 301 F3d 1043, 1053 (9th Cir. 2002).  Accordingly, the Court must determine whether, viewing all the facts in the light most favorable to Brown, a reasonable officer would understand that the conduct of Sergeant Bolton or Officer Yost violated a clearly established constitutional right.

> A right is clearly established if its
> "contours" are sufficiently clear that a
> reasonable official would understand that
> what he is doing violates that right.  Even

> if the violated right is clearly established
> . . . in certain situations, it may be
> difficult for a police officer to determine
> how to apply the relevant legal doctrine to
> the particular circumstances he or she faces.
> [T]herefore, . . . if an officer makes a
> mistake in applying the relevant legal
> doctrine, he or she is not precluded from
> claiming qualified immunity so long as the
> mistake is reasonable.  That is, if the
> officer's mistake as to what the law requires
> is reasonable, . . . the officer is entitled
> to the immunity defense.

*Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1060-61 (9th Cir.

2006)(quotations omitted).

"Because the focus is on whether the officer had fair notice

that [his] conduct was unlawful, . . . [i]f the law at [the time

of the conduct] did not clearly establish that the officer's

conduct would violate the Constitution, the officer should not be

subject to liability."  *Brosseau*, 125 S. Ct. at 599.

> The "clearly established" requirement "operates
> 'to ensure that before they are subjected to suit,
> [government officials] are on notice their conduct
> is unlawful.'"  *Hope v. Pelzer*, 536 U.S. 730, 739
> (2002)(quoting *Saucier*, 533 U.S. at 206).  For a
> constitutional right to be clearly established,
> "its contours 'must be sufficiently clear that a
> reasonable official would understand that what he
> is doing violates that right'" at the time of his
> conduct.  *Id.* (citations omitted)(quoting *Anderson
> v. Creighton*, 483 U.S. 635, 640 (1987)).  If a
> plaintiff's constitutional rights were not clearly
> established at the time of the violation, then
> qualified immunity should be granted.

*Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009).

**1.  Sergeant Bolton.**

Brown has submitted evidence that reflects he told

Sergeant Bolton on November 14, 2007, that STG representatives threatened his life, which, when viewed in the light most favorable to Brown, establishes a jury question as to whether Sergeant Bolton was aware of a substantial risk of harm to Brown and failed to act to address that risk.  It is "well-settled" that an officer is deliberately indifferent, and, therefore, violates a prisoner's Eighth Amendment rights if the officer was aware of a substantial risk of serious harm, but "took no steps to abate" it.  *Clem*, 566 F.3d at 1181-82.  According to Brown, Sergeant Bolton did not investigate or take any other action in response to the reported threat to Brown.  If true, such a failure to act violates a clearly established constitutional right.

The Court, therefore, concludes on this record Sergeant Bolton is not entitled to qualified immunity.

### 2.  Officer Yost.

Brown has submitted evidence that Officer Yost was on duty when Brown was attacked in the television room, and that Officer Yost observed the attack for 45 seconds without taking any action whatsoever, which, when viewed in the light most favorable to Brown, establishes Officer Yost delayed his response to the substantial risk of harm to Brown presented by the assault.  Even though it would violate a clearly established constitutional right for Officer Yost to completely disregard a

31  -  OPINION AND ORDER

substantial risk of harm to an inmate of which he was aware, the parties do not point to, and the Court cannot locate, any authority that clearly establishes a 45 second delay in responding to a substantial risk of harm violates a constitutional right.   Accordingly, Officer Yost's delay in acting did not violate a clearly established constitutional right.

The Court, therefore, concludes on this record that Officer Yost is entitled to qualified immunity, and Defendants are entitled to summary judgment as to this claim.

**B.   Supervisory Defendants.**

The Court has already concluded Brown has not established that the supervisory Defendants violated his Eighth Amendment rights.   Accordingly, the further inquiries as to the supervisory Defendants right to qualified immunity "are not necessary" and the supervisory Defendants are entitled to qualified immunity. *Saucier*, 533 U.S. at 201.

The Court, therefore, concludes on this record that the supervisory Defendants are entitled to qualified immunity.

**CONCLUSION**

For these reasons, the Court **GRANTS in part** Defendants' Motion (#30) for Summary Judgment as follows:

(1) **GRANTS** Defendants' Motion as to Brown's claims against

32  -  OPINION AND ORDER

them in their official capacities;

    (2)  **GRANTS** Defendants' Motion as to Brown's claim against Defendants for denying him adequate medical care;

    (3)  **DENIES** Defendants' Motion as to Brown's claim against Sergeant Bolton;

    (4)  **GRANTS** Defendants' Motion as to Brown's claim against Officer Yost; and

    (5)  **GRANTS** Defendants' Motion as to Brown's claims against Defendants Nooth, Miller, and Rodriguez.

The Court also **DENIES as moot** Brown's Motion (#49) in opposition to Defendants' Motion for Summary Judgment because the Court has considered Brown's Motion as a Response to Defendants' arguments.

Because the only remaining claim for resolution is Brown's claim against Sergeant Bolton, the Court will set a Rule 16 telephone conference with the parties in due course for purposes of scheduling trial and related proceedings.

IT IS SO ORDERED.

DATED this 1st day of September, 2009.


                           ___/s/ Anna J. Brown_____
                           ANNA J. BROWN
                           United States District Judge